**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: 310-405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ALBERTO ASMAT, Individually and On Behalf of All Others Similarly Situated,<br><br>                                        Plaintiff,<br><br>                          v.<br><br>CONTEXTLOGIC INC., PIOTR SZULCZEWSKI, RAJAT BAHRI, BRETT JUST, JULIE BRADLEY, ARI EMANUEL, JOE LONSDALE, TANZEEN SYED, STEPHANIE TILENIUS, HANS TUNG, and JACQUELINE RESES,<br><br>                                        Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Alberto Asmat ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange

Commission ("SEC") filings, wire and press releases published by and regarding ContextLogic Inc. ("ContextLogic" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired: (a) ContextLogic securities pursuant and/or traceable to the Company's initial public offering conducted on or about December 16, 2020 (the "IPO" or "Offering"); or (b) ContextLogic securities between December 16, 2020 and May 12, 2021, both dates inclusive (the "Class Period").  Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.      ContextLogic operates as a mobile ecommerce company in Europe, North America, South America, and internationally.  The Company operates the Wish platform that connects users to merchants and also provides marketplace and logistics services to merchants. The Company also generates fees by offering advertising and logistics services to its merchants, and Wish claims to have a user base of 100 million monthly active users ("MAUs") and 500,000 merchants.

3.      On November 20, 2020, ContextLogic filed a registration statement on Form S-1 with the SEC in connection with the IPO, which, after an amendment, was declared effective by the SEC on December 15, 2020 (the "Registration Statement").

4.      On December 16, 2020, pursuant to the Registration Statement, ContextLogic's securities began trading on the NASDAQ Global Market ("NASDAQ") under the symbol "WISH."  On December 17, 2020, ContextLogic filed a prospectus on Form 424B4 with the SEC in connection with the IPO,

which incorporated and formed part of the Registration Statement (collectively, the "Offering Documents").

5. Pursuant to the Offering Documents, ContextLogic issued 46 million of its shares to the public at the Offering price of $24.00 per share for approximate proceeds of $1.1 billion.

6. The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation. Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) ContextLogic's Q4 2020 MAUs had declined materially and were not then growing; (ii) accordingly, ContextLogic had materially overstated the Company's business metrics and financial prospects; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

7. On March 8, 2021, ContextLogic announced its Q4 2020 financial results. In a press release, the Company stated that, during Q4 2020 its MAUs declined 10% YoY during Q4 to 104 million, primarily in some emerging markets outside of Europe and North America where Wish temporarily de-emphasized advertising and customer acquisition as the company worked through logistics challenges it faced earlier in the year."

8. On this news, ContextLogic's stock price fell $1.83 per share, or 10%, to close at $15.94 per share on March 8, 2021.

9. Then, on May 12, 2021, ContextLogic announced its Q1 2021 financial results. The Company disclosed that its MAUs had declined another 7% to just 101 million. In addition, the Company's forward sales guidance also fell short, with its Q2 2021 revenue guidance of just $715 million

2

to $730 million representing a significant departure from the $759 million the market had been led to expect and far less than the guidance of $735 to $750 million provided for Q1 2021.

10.     On this news, ContextLogic's stock price fell $3.36 per share, or 29%, to close at $8.11 per share on May 13, 2021.

11.     As of the time this Complaint was filed, the price of ContextLogic securities continues to trade below the Offering price, damaging investors.

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of ContextLogic's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and §27 of the 1934 Act, as ContextLogic is headquartered in this District and many of the false and misleading statements alleged herein were disseminated from this District.

16.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17.     Plaintiff, as set forth in the attached Certification, acquired ContextLogic securities pursuant and/or traceable to the Offering Documents issued in connection with the Company's IPO, and/or purchased or otherwise acquired ContextLogic securities at artificially inflated prices during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

18.     Defendant ContextLogic Inc. is incorporated in Delaware with principal executive offices located at One Sansome Street 40th Floor, San Francisco, CA 94104.  The Company's common stock trade in an efficient market on the NASDAQ under the ticker symbol "WISH."

19.     Defendant Piotr Szulczewski ("Szulczewski") has served as ContextLogic's Chief Executive Officer ("CEO") and Chairman of its Board of Directors at all relevant times.

20.     Defendant Rajat Bahri ("Bahri") has served as ContextLogic's Chief Financial Officer ("CFO") at all relevant times.

21.     Defendants Szulczewski and Bahri are sometimes referred to herein collectively as the "Exchange Act Individual Defendants."

22.     The Exchange Act Individual Defendants possessed the power and authority to control the contents of ContextLogic's SEC filings, press releases, and other market communications.  The Exchange Act Individual Defendants were provided with copies of ContextLogic's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with ContextLogic, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then

materially false and misleading.   The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

23.      ContextLogic and the Exchange Act Individual Defendants are sometimes referred to herein collectively as the "Exchange Act Defendants."

24.      Defendant Brett Just ("Just") has served as ContextLogic's Chief Accounting Officer at all relevant times.  Just signed or authorized the signing of the Offering Documents filed with the SEC.

25.      Defendant Julie Bradley ("Bradley") served as a director of ContextLogic at the time of the IPO.  Bradley signed or authorized the signing of the Offering Documents filed with the SEC.

26.      Defendant Ari Emanuel ("Emanuel") served as a director of ContextLogic at the time of the IPO.  Emanuel signed or authorized the signing of the Offering Documents filed with the SEC.

27.      Defendant Joe Lonsdale ("Lonsdale") served as a director of ContextLogic at the time of the IPO.  Lonsdale signed or authorized the signing of the Offering Documents filed with the SEC.

28.      Defendant Tanzeen Syed ("Syed") served as a director of ContextLogic at the time of the IPO.  Syed signed or authorized the signing of the Offering Documents filed with the SEC.

29.      Defendant Stephanie Tilenius ("Tilenius") served as a director of ContextLogic at the time of the IPO.  Tilenius signed or authorized the signing of the Offering Documents filed with the SEC.

30.      Defendant Hans Tung ("Tung") served as a director of ContextLogic at the time of the IPO.  Tung signed or authorized the signing of the Offering Documents filed with the SEC.

31.      Defendant Jacqueline Reses ("Reses") was identified as an incoming director of ContextLogic at the time of the IPO and was named a member of the Board of Directors on December 18, 2020.

32.      Defendants Just, Bradley, Emanuel, Lonsdale, Syed, Tilenius, Tung, and Reses are sometimes referred to herein collectively as the "Securities Act Individual Defendants."

33.     As directors, executive officers and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation and sale of ContextLogic securities in the IPO for their own benefit and the benefit of ContextLogic.  The Securities Act Individual Defendants were key members of the IPO working group and executives of ContextLogic who pitched investors to purchase the shares sold in the IPO, including in IPO road shows.

34.     The Exchange Act Defendants and the Securities Act Individual Defendants are sometimes collectively, in whole or in part, referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

35.     ContextLogic operates as a mobile ecommerce company in Europe, North America, South America, and internationally.  The Company operates the Wish platform that connects users to merchants and also provides marketplace and logistics services to merchants.  The Company also generates fees by offering advertising and logistics services to its merchants, and Wish claims to have a user base of 100 million MAUs and 500,000 merchants.

36.     On November 20, 2020, ContextLogic filed a registration statement on Form S-1 with the SEC in connection with the IPO, which, after an amendment, was declared effective by the SEC on December 15, 2020.

37.     On December 16, 2020, pursuant to the Registration Statement, ContextLogic's securities began trading on the NASDAQ under the symbol "WISH."  On December 17, 2020, ContextLogic filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement.

38.      Pursuant to the Offering Documents, ContextLogic issued 46 million of its shares to the public at the Offering price of $24.00 per share for approximate proceeds of $1.1 billion.

**Materially False and Misleading Statements Issued in the Offering Documents**

39.     The Offering Documents touted the Company's financial model, stating, in relevant part:

Our business benefits from powerful network effects, fueled by our data advantage and massive scale. As more users join Wish, attracted by our affordable value proposition and shopping experience, we are able to increase revenue potential for our merchants. As more merchants succeed on Wish, more merchants join the platform and grow their businesses with Wish, broadening our product selection, which in turn improves user experience. By developing a strategy focused on users and merchants, we align user and merchant success with the success of our financial model. The growth in users and merchants generates more data, further strengthens our data advantage and creates an even better experience for everyone on our platform, in turn attracting more users and high-quality merchants.

Our model relies on cost-effectively adding new users, converting those users into buyers and improving engagement and monetization of those buyers on Wish over time as well as adding new merchants, delivering economic success for those merchants, and having those merchants use more of our end-to-end platform.

The following are key elements of our financial model that drive our growth:

- **Increase the scale and growth of our user and buyer base**. Attracting and engaging users have been our key areas of focus since our founding. We measure our effectiveness in attracting and engaging users through metrics such as our MAUs, which increased over 33% from the nine months ended September 30, 2019 and to the nine months ended September 30, 2020, as well as the average minutes spent per visit by user. These increases have primarily been driven by the growing popularity and recognition of our brand and platform, the user preferences for our differentiated mobile shopping experience, wide selection of attractively priced products, and the success of our promotional and marketing campaigns. This growth has contributed to making Wish the most downloaded global shopping app for each of the last three years according to a report from Sensor Tower.17 As a result, we have experienced significant revenue growth in recent periods. We will need to continue to invest in our marketing efforts to attract additional users and buyers and to enhance our brand and drive user engagement, and over time we will need to do this cost-effectively in order to achieve profitability.

40.     The Offering Documents also touted the impact of MAUs on the Company's business, stating, in relevant part:

We have become one of the largest and fastest growing global ecommerce platforms, connecting more than 100 million monthly active users ("MAUs" or "monthly active users") in over 100 countries to over 500,000 merchants offering approximately 150 million items. Our platform combines technology and data science capabilities, an innovative and discovery-based mobile shopping experience, a comprehensive suite of indispensable merchant services, and a massive scale of users, merchants, and items.

*** 

Our scale, combined with our extensive data science capabilities, provides us with a unique competitive advantage and is core to our business operations. We collect, analyze, and utilize data across over 100 million monthly active users, over 500,000 merchants, and approximately 1.8 million items sold per day to improve the shopping experience for users and the selling experience for merchants. Our proprietary algorithms analyze a rich and growing data set of transactions and historical behaviors of both users and merchants to drive continuous optimization on the platform and inform key business decisions on a daily basis. Our data science enables personalization at the individual user level at a massive scale and drives significant advantages across all aspects of our business operations, including user acquisition, user experience, pricing strategies, user-generated content, merchant insights, and user and merchant support. For example, our user acquisition strategies utilize our data science capabilities to make decisions on what to show to whom, when, and through which acquisition channel, with a focus on maximizing our return on marketing investment and user conversion. We also leverage our data and unique insights to extend our platform outside of our core business and drive additional growth opportunities, including new services to merchants and new categories for users.

41.     Further, in discussing the Company's "Key Milestones," the Offering Documents represented, graphically:

8

42.     In addition, the Offering Documents touted the Company's Wish platform, stating, in relevant part:

> Our global ecommerce platform connects over 100 million monthly active users in over 100 countries to over 500,000 global merchants. We seek to democratize ecommerce by making the Wish platform affordable, open, and accessible to all users and merchants worldwide. We do this through our relentless focus on product, technology, and data science. For our users, we are revolutionizing the mobile shopping experience by making it affordable, personalized, and entertaining. For our merchants, we offer immediate, cost-efficient access to our global user base, scaled data, and technology platform, as well as a comprehensive suite of indispensable services to help run their businesses and drive sales. To serve our global and diversified user and merchant base, we approach our platform development with a specific geographic focus, tailoring key features to solve for the needs of that locality, and enabling an authentic, localized experience.

43.     Finally, the Offering Documents also discussed acquiring new users as part of the Company's growth strategy, stating, in relevant part:

> **Grow Our Base of Users**
>
> • **Continue to Acquire New Users**. We are focused on growing our user base around the world. We currently serve users in over 100 countries. We estimate that there are over 1 billion households with income of less than $75,000 around the world, excluding China and India.

9

- **Drive User Conversion**. We have over 12 million monthly active buyers13 and over 100 million monthly active users on the platform. We will continue to drive greater user engagement and convert more active users on our platform to become active buyers by utilizing our data science and introducing more interactive and entertaining features.

- **Drive Profitable Lifetime Value from Existing Users**. We plan to continue to improve the engagement and monetization of our users on our platform to maximize their lifetime value. We plan to achieve this goal by:

   o Using our data science to drive personalization of our platform;
   o Continuing to offer attractive discounts and value, an entertaining user experience, and robust user-generated content; and
   o Improving our ease of use by investing in our user support and logistics infrastructure to enable faster deliveries and localization of our platform.

- **Expand Geographically**. We intend to continue to expand our global footprint and enter new geographies and acquire new users in those markets.

44.     The statements referenced in ¶¶ 39-43, *supra*, were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.  Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) ContextLogic's Q4 2020 MAUs had declined materially and were not then growing; (ii) accordingly, ContextLogic had materially overstated the Company's business metrics and financial prospects; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

45.     Additionally, Defendants violated their affirmative obligations to provide certain material information in SEC filings as required by applicable SEC rules and regulations.  Specifically, Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303 ("Item 303"), required Defendants to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a materially favorable or

unfavorable impact on net sales or revenues or income from continuing operations."  In addition, Item 105 of SEC Regulation S-K, 17 C.F.R. § 229.105 ("Item 105"), required, in the "Risk Factors" section of the IPO Registration Statement, a "discussion of the material factors that make an investment in the registrant or offering speculative or risky" and that each risk factor "adequately describe[] the risk," including by concisely explaining "how each risk affects the registrant or the securities being offered."  Defendants' failure to disclose the information in ¶¶ 39-43 violated Item 303 and Item 105, because these adverse facts, trends, and uncertainties were known to Defendants and involved some of the most significant factors impacting the risk profile of ContextLogic securities and were likely to, and did, have a material adverse impact on ContextLogic's sales, revenues, and income from continuing operations.

### **Materially False and Misleading Statements Issued During the Class Period**

46.     The Class Period begins on December 16, 2020, when ContextLogic's securities began publicly trading on the NASDAQ pursuant to the materially false or misleading statements or omissions in the Offering Documents, as referenced in ¶¶ 39-43, *supra*.

47.     On March 8, 2021, ContextLogic issued a press release announcing the Company's Q4 and full year 2020 financial results.  The press release listed as two of the Company's business highlights, "[f]or the full year 2020, Monthly Active Users (MAUs) increased 19% YoY to more than 107 million[]" and "MAUs declined 10% YoY during Q4 to 104 million, primarily in some emerging markets outside of Europe and North America where Wish temporarily de-emphasized advertising and customer acquisition as the company worked through logistics challenges it faced earlier in the year."

48.     On March 25, 2021, ContextLogic filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2020 (the "2020 10-K").  In discussing the Company's Wish platform, the 2020 10-K stated, in relevant part:

> We also built Wish to empower merchants around the world. Today, most of our merchants are based in China. We initially grew our platform focusing on merchants in China due to these merchants' strength in selling

11

quality products at competitive prices. We continue to expand our merchant base around the world. Through our diversified and global merchant base, we are able to offer greater depth and breadth of categories and products. We give our merchants immediate access to our global base of over 100 million monthly active users and a comprehensive suite of indispensable services, including demand generation and engagement, user-generated content creation, data intelligence, promotional and logistics capabilities, and business operations support, all in a cost-efficient manner.

\*\*\*

Our global ecommerce platform connects over 100 million monthly active users in over 100 countries to over 550,000 global merchants. We seek to democratize ecommerce by making the Wish platform affordable, open, and accessible to all users and merchants worldwide. We do this through our relentless focus on product, technology, and data science. For our users, we are revolutionizing the mobile shopping experience by making it affordable, personalized, and entertaining. For our merchants, we offer immediate, cost-efficient access to our global user base, scaled data, and technology platform, as well as a comprehensive suite of indispensable services to help run their businesses and drive sales. To serve our global and diversified user and merchant base, we approach our platform development with a specific geographic focus, tailoring key features to solve for the needs of that locality, and enabling an authentic, localized experience.

49.   Further, in discussing the Company's financial model, the 2020 10-K stated, in relevant part:

Our business benefits from powerful network effects, fueled by our data advantage and massive scale. As more users join Wish, attracted by our affordable value proposition and shopping experience, we are able to increase revenue potential for our merchants. As more merchants succeed on Wish, more merchants join the platform and grow their businesses with Wish, broadening our product selection, which in turn improves user experience. By developing a strategy focused on users and merchants, we align user and merchant success with the success of our financial model. The growth in users and merchants generates more data, further strengthens our data advantage and creates an even better experience for everyone on our platform, in turn attracting more users and high-quality merchants.

Our model relies on cost-effectively adding new users, converting those users into buyers and improving engagement and monetization of those buyers on Wish over time as well as adding new merchants, delivering economic success for those merchants, and having those merchants use more of our end-to-end platform.

The following are key elements of our financial model that drive our growth:

- **Increase the scale and growth of our user and buyer base**. Attracting and engaging users have been our key areas of focus since our founding. We measure our effectiveness in attracting and engaging users through metrics such as our MAUs, which increased over 19% from the year ended December 31, 2019 to the year ended December 31, 2020. This increase has primarily been driven by the growing popularity and recognition of our brand and platform, the user preferences for our differentiated mobile shopping experience, wide selection of attractively priced products, and the success of our promotional and marketing campaigns. As a result, we have experienced significant revenue growth in recent periods. We will need to continue to invest in our marketing efforts to attract additional users and buyers and to enhance our brand and drive user engagement, and over time we will need to do this cost-effectively in order to achieve profitability.

50.     The statements referenced in ¶¶ 46-49, *supra*, were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) ContextLogic's Q4 2020 MAUs had declined materially and were not then growing; (ii) accordingly, ContextLogic had materially overstated the Company's business metrics and financial prospects; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

## **The Truth Emerges**

51.     On May 12, 2021, ContextLogic announced its Q1 2021 financial results.  The Quarterly Report filed with the SEC on Form 10-Q, the Company stated, in relevant part:

> MAUs decreased approximately 7% from the three months ended March 31, 2020 to the three months ended March 31, 2021, primarily driven by the decision to de-emphasize user acquisition in some emerging markets outside of Europe and North America where we faced logistical challenges due to the pandemic and to emphasize higher LTV users within the same value-conscious consumer category in many of the more developed markets.

In addition, the Company's forward sales guidance also fell short, with its Q2 2021 revenue guidance of just $715 million to $730 million, a significant departure from the $759 million the market had been led to expect and far less than the guidance of $735 to $750 million provided for Q1 2021.

52.     On this news, ContextLogic's stock price fell $3.36 per share, or 29%, to close at $8.11 per share on May 13, 2021.

53.     As of the time this Complaint was filed, the price of ContextLogic securities continues to trade below the Offering price, damaging investors.

54.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of ContextLogic's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) ContextLogic securities in the IPO or purchased ContextLogic securities thereafter in the stock market pursuant and/or traceable to the Company's Offering Documents issued in connection with the IPO; or (b) ContextLogic securities during the Class Period; and were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

56.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, ContextLogic securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by

ContextLogic or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

57.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

58.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

59.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of ContextLogic;

- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether the Exchange Act Individual Defendants caused ContextLogic to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

15

- whether the prices of ContextLogic securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

60.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

61.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- ContextLogic securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold ContextLogic securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

62.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

16

63.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 11 of the Securities Act Against All Defendants)

64.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

65.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Defendants.

66.     The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

67.     ContextLogic is the registrant for the IPO.  Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

68.     As issuer of the shares, ContextLogic is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

69.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

70.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

71.     Plaintiff acquired ContextLogic shares pursuant and/or traceable to the Offering Documents for the IPO.

17

72.     Plaintiff and the Class have sustained damages.  The value of ContextLogic securities has declined substantially subsequent to and because of Defendants' violations.

## COUNT II

**(Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)**

73.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

74.     This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

75.     The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of ContextLogic within the meaning of Section 15 of the Securities Act.  The Securities Act Individual Defendants had the power and influence and exercised the same to cause ContextLogic to engage in the acts described herein.

76.     The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

77.     By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## COUNT III

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)**

78.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

79.     This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

80.     During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of ContextLogic securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire ContextLogic securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

81.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for ContextLogic securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about ContextLogic's finances and business prospects.

82.     By virtue of their positions at ContextLogic, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the

statements made, although such facts were readily available to the Exchange Act Defendants.  Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth.  In addition, each of the Exchange Act Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

83.  Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control.  As the senior managers and/or directors of ContextLogic, the Exchange Act Individual Defendants had knowledge of the details of ContextLogic's internal affairs.

84.  The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of ContextLogic.  As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to ContextLogic's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of ContextLogic securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning ContextLogic's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired ContextLogic securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

85.  During the Class Period, ContextLogic securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be

20

disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of ContextLogic securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of ContextLogic securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of ContextLogic securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

86.     By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

87.     As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT IV

### (Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)

88.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

89.     During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of ContextLogic, and conducted and participated, directly and indirectly, in the conduct of ContextLogic's business affairs.  Because of their senior positions, they knew the adverse

non-public information about ContextLogic's misstatement of income and expenses and false financial statements.

90.     As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to ContextLogic's financial condition and results of operations, and to correct promptly any public statements issued by ContextLogic which had become materially false or misleading.

91.     Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which ContextLogic disseminated in the marketplace during the Class Period concerning ContextLogic's results of operations.   Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause ContextLogic to engage in the wrongful acts complained of herein.   The Exchange Act Individual Defendants therefore, were "controlling persons" of ContextLogic within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of ContextLogic securities.

92.     Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of ContextLogic.   By reason of their senior management positions and/or being directors of ContextLogic, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, ContextLogic to engage in the unlawful acts and conduct complained of herein.   Each of the Exchange Act Individual Defendants exercised control over the general operations of ContextLogic and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

93.     By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by ContextLogic.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  June 29, 2021                         Respectfully submitted,

**POMERANTZ LLP**

By: _s/ Jennifer Pafiti_
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: 310-405-7190
jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**

23

Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

Thursday, May 20, 2021

# ContextLogic, Inc. (WISH)

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.  I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against ContextLogic, Inc. ("ContextLogic" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire ContextLogic securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired ContextLogic securities pursuant and/or traceable to the IPO, as specified in the Complaint, as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   The attached sheet lists all of my transactions in ContextLogic securities pursuant and/or traceable to the IPO,

6.   During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

**Name**

**Print Name**
Alberto Asmat

**Signature**

1



redacted

**ContextLogic Inc. (WISH)**                                          **Asmat, Alberto**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 4/14/2021 | 450 | $13.6300 |